**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-11269**
_____

**ALLEN WAYNE JOHNSON,**

**Petitioner-Appellee,**

**versus**

**GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT**
**OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(3:95-CV-562-T)**
_____

December 18, 1997

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Gary L. Johnson, Director of the Texas Department of Criminal Justice, Institutional Division, appeals a portion of the district court's grant of habeas relief to Allen Wayne Johnson, contending that the court erred by concluding that the prosecutor's remarks during closing argument at the guilt phase of Johnson's trial violated due process. We **REVERSE in PART** and **REMAND**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

In 1989, a Texas jury convicted Johnson for delivery of a controlled substance (methamphetamine). The jury found a prior murder conviction alleged for enhancement of punishment to be true and sentenced Johnson to 75 years' imprisonment.

Johnson's conviction was affirmed by the state court of appeals in December 1990. But, the Texas Court of Criminal Appeals granted Johnson's petition for discretionary review; in April 1992, it remanded the case to the court of appeals to determine whether the prosecutor's improper argument at the punishment phase of trial was harmless. (At that phase, the prosecutor had suggested repeatedly the existence of additional evidence which the State was precluded by the rules of evidence from presenting to the jury.) On remand, in March 1993, the court of appeals affirmed the conviction, finding harmless error.

Johnson filed a state court habeas application in July 1993, claiming, *inter alia*, that the prosecutor's argument at the guilt phase violated due process. The Texas Court of Criminal Appeals denied the application without written order in January 1994. In December 1994, Johnson filed a second state habeas application, again claiming, *inter alia*, prosecutorial misconduct during closing argument at the guilt phase. The Texas Court of Criminal Appeals denied that application without written order in December 1994.

In 1996, Johnson filed for federal habeas relief, asserting that the grand jury lacked jurisdiction to indict him; that the prosecutor made improper arguments at voir dire and during closing arguments at the guilt and punishment phases; that the evidence was insufficient to support his conviction; and that his conviction was based on inadmissible hearsay. The magistrate judge concluded that the prosecutor's arguments during the guilt and punishment phases violated due process, but rejected Johnson's other contentions. Accordingly, the magistrate judge recommended that the district court grant Johnson habeas relief unless the State retried him.

The district court adopted the recommendation, granted habeas relief, and ordered Johnson released from custody. The Director's motion for a stay of the judgment pending appeal was granted by the district court.

## II.

The Director does not challenge the district court's conclusion that the prosecutor's arguments during the punishment phase violated due process. He contends, however, that the district court erred by granting habeas relief based on the prosecutor's arguments during the guilt phase.

It goes without saying that, on appeal from a grant of habeas relief, "we review the district court's findings of fact for clear error, but review issues of law *de novo*." *Dison v. Whitley*, 20 F.3d 185, 186 (5th Cir. 1994). And, because Johnson filed for

federal habeas relief prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "we must apply the pre-AEDPA standards of review". *Gochicoa v. Johnson*, 118 F.3d 440, 444 (5th Cir. 1997).

"The standard for granting habeas relief because of prosecutorial misconduct is the narrow one of due process, and not the broad exercise of supervisory power." *Derden v. McNeel*, 978 F.2d 1453, 1460 (5th Cir. 1992) (en banc) (internal quotation marks and citation omitted), *cert. denied*, 508 U.S. 960 (1993). "To establish that a prosecutor's remarks are so inflammatory as to have prejudiced the substantial rights of a defendant, a habeas petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction would probably not have occurred." *Byrne v. Butler*, 845 F.2d 501, 508 (5th Cir.), *cert. denied*, 487 U.S. 1242 (1988). In other words, the prosecutor's conduct is not of constitutional magnitude "unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988), *cert. denied*, 490 U.S. 1075 (1989); *see also Houston v. Estelle*, 569 F.2d 372, 378 n.8 (5th Cir. 1978) ("In order for a state habeas petitioner to prevail on a claim [in federal court] that an improper jury argument marred his trial the asserted error must be one of

constitutional magnitude.  This means that the prosecutorial remarks must be so prejudicial that they render the trial fundamentally unfair.").

In sum, a prosecutor's argument, by itself, is a constitutional violation in only the most egregious cases.  *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987); *see also **Houston v. Estelle***, 569 F.2d at 382 ("a defect of constitutional proportions is not to be found in any but egregious cases").  "The constitutional frontier stands very far indeed from the core of good prosecutorial practice."  *Id*. at 384.  Along that line, a prosecutor's statements must be viewed in the context of the entire trial to determine if the improper statements or arguments were a "crucial, critical, highly significant factor in the jury's determination of guilt."  *Ortega*, 808 F.2d at 410-11 (internal quotation marks and citation omitted); *see also **Houston v. Estelle***, 569 F.2d at 377 ("we are required to evaluate the remarks alleged to be improper in the context of the entire trial").

At issue are these comments by the prosecutor during closing argument at the guilt phase.  The State contends that the comments did not violate due process.  In urging that they did, Johnson also relies upon two aspects not utilized by the district court: the prosecutor's references to him as a "major drug dealer" and a "lawyer".

> We can get the kids that are possessing
> it.  They won't come in here.  They -- they're

- 5 -

not lawyers like Allen Wayne Johnson. They can't draw up documents and have their father sign, look like a lawyer drew up then spring them on the day, not even his lawyer knew about it.

He knows what he's doing, and he's a killer. He's two times a killer. He actually, literally kills people; and he also sells the stuff that kills people. That's -- how do you think he's lived for two years without a job? There's big money in this, ladies and gentlemen, and you can live awful good. And you can support your habit awful good.

....

[As for defense counsel's] argument -- hey, he's not a big drug dealer. Don't you kid yourself. Because he can't make bond. Don't you kid yourself. We got the bond up so high, he couldn't make it. Somebody has been watching too much television, not in this case. He's a killer, and he takes care of business. He don't -- you don't pay him on a drug deal, you die.

....

.... We can sit here and say all day long, "Why don't we get the big drug dealers?" "Why don't we get the guys dealing these drugs?" What good is it going to do us to get the people they sell it to? Well, they try. They got a guy in here, and they got a dealer. If it's not enough for you, we'll go back and regroup, try again.

....

.... We've got to have rehabilitation, but we can't neglect the chance to get ... a major drug dealer off our streets so we can do something with those people that he's selling to with some education.

Although he objected to other portions of the prosecutor's closing argument, on the ground that the remarks were "outside the record", Johnson did not object to the above-quoted comments. Nevertheless, the Director does not raise the failure to object as a procedural bar, and the state courts did not decline to review Johnson's claims for failure to comply with state procedural rules. Accordingly, Johnson's failure to object does not prevent our consideration of the merits of his claim. *See* **Gochicoa**, 118 F.3d at 445.

The magistrate judge's report and recommendation, adopted by the district court, stated that "[t]here was no evidence of any threats of violence with reference to the delivery of methamphetamine charge", and concluded that Johnson was entitled to habeas relief because the "egregiously harmful" remarks "clearly urged the jury to convict Johnson, not upon the basis of delivery of less than 2 grams of a controlled substance, but on the basis that Johnson killed people in the course of drug dealing." As noted, and in the alternative, Johnson urges that the comments that he was "a major drug dealer" and a "lawyer" also are bases for upholding the habeas relief granted as to his conviction.

### A.

The Director contends that, when the arguments are considered in the light of the entire trial, they did not unfairly prejudice Johnson. In order to so examine the comments at issue, we must

first consider the evidence introduced during the guilt phase. That phase was essentially a credibility contest between Johnson and the police officer to whom he sold the methamphetamine — Corsicana, Texas, Officer Semetco.

The Officer testified that, while working undercover in May 1989, he made it known within drug-trafficking circles that he was in the market for methamphetamine; that he went to a house, where he was introduced to Johnson, who stated that he could provide Semetco with an "eight-ball" of methamphetamine; that he gave Johnson $225; and that Johnson told Semetco that he would return the next day. According to Semetco, Johnson did not return the next day, and he did not see Johnson until about one month later.

Semetco testified further that he went to Johnson's residence on 21 June; that he was invited inside by Johnson's father; and that he (Semetco) went to a back bedroom and saw Johnson, who stated that he had been in the McKinney, Texas, area for the last month, working for some friends who had approximately five pounds of methamphetamine to sell. According to Semetco, Johnson's father remained in the living area while Semetco and Johnson spoke in the back bedroom. Semetco testified that Johnson gave him a baggie containing a substance Semetco believed was methamphetamine; a chemist testified that it was 1.26 grams of methamphetamine.

Johnson was the only witness presented at his case-in-chief. His father's affidavit was also admitted into evidence.

Johnson testified that he had been convicted of murder in 1980 and was released from prison in 1987; that Mary Lou Larson brought Semetco to Johnson's apartment in May 1989; that Semetco inquired about purchasing amphetamines; that he (Johnson) told Larson and Semetco that he was not in the drug business and asked Larson not to return; and that no money changed hands during the May meeting.

Johnson testified further that, during the June meeting with Semetco, his father stood in the bedroom doorway; that Semetco asked whether Johnson had anything for him; and that he told Semetco that he knew Semetco was a narcotics officer and asked him to leave. According to Johnson, Larson had told him that Semetco was a narcotics officer. Moreover, during Johnson's testimony on direct examination, his father's affidavit, supporting Johnson's version of the June meeting with Semetco, was admitted.

On cross-examination, Johnson admitted that he was a drug addict; and that he received a 48-year sentence for murder, but served only six years. The trial court sustained Johnson's objection to the question whether his murder conviction had involved drugs; the jury was instructed not to consider the question for any purpose. Johnson denied that he had written his father's earlier-referenced affidavit and denied selling methamphetamine. He testified that he had been imprisoned because he pleaded guilty to murder, but that records in the prosecutor's office would demonstrate that someone else committed the murder. And, according to Johnson, he did not commit the crime for which he

was then on trial. Johnson testified that he had been unable to find a job for the past two years.

In rebuttal, Semetco testified that his May (first) meeting with Johnson did not occur at Johnson's residence; and that Johnson's father was not present in the same room when the transaction took place in June. According to Semetco, Johnson "stated that if he were busted, it would be a one-on-one situation, that he would face the cop in court, find out who he was and would get him or his friends, would get him, his wife, his kids, his parents."

Prior to closing arguments, the jury was instructed that it could not consider Johnson's prior conviction as evidence of guilt, but that it could consider the conviction "in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose". Following the charge, the prosecutor waived the right to open closing arguments.

In his closing argument, defense counsel attacked Semetco's credibility and the chemical analysis of the methamphetamine; he also repeated Johnson's theory that he had been framed by the police, and urged the jury to find reasonable doubt because the evidence consisted primarily of Semetco's word against Johnson's.

The prosecutor then made his closing argument. Prior to making the above-quoted remarks at issue, the prosecutor urged the jury "to follow your oath as a juror and base your verdict solely on the evidence that you heard from the witness stand". And, after

the comments at issue, the prosecutor stressed, as had Johnson's counsel, that the case presented a credibility choice between Semetco and Johnson: "[T]hat's all we have in any drug dealing case. We have the word of a police officer and we have the word and testimony of the drug dealer. And now you have the case. You decide who you are going to believe."

As the Director concedes, the prosecutor's statement that Johnson killed individuals who did not pay him for drugs has no foundation in the record and was, therefore, improper. The trial court, as noted, had sustained Johnson's objection to cross-examination along that line; and no evidence was introduced linking drug trafficking to the murder.

We do not condone the comments at issue; they obviously should not have been made. Nevertheless, we conclude that Johnson "has failed to carry his burden of showing that the evidence against him was so insubstantial that but for [the challenged] remarks no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). The jury was entitled to believe Semetco's testimony that Johnson sold methamphetamine to him; and it had reason to disbelieve Johnson's testimony because of his murder conviction and inconsistencies in his testimony. *See Ortega*, 808 F.2d at 411. As stated, the jury was aware, through Johnson's testimony on direct examination, that he had pleaded guilty to murder. *See Byrne v. Butler*, 845 F.2d at 511-12 (no constitutional

violation where information divulged in prosecutor's allegedly improper remarks was already before the jury and trial court properly instructed jury).  In the light of Semetco's testimony that Johnson had threatened to "get" any police officer who arrested him and to "get" the officer's family and friends, the district court erred by concluding that "[t]here was no evidence of any threats of violence with reference to the delivery of methamphetamine drugs".

As noted, the trial court instructed the jury not to consider Johnson's prior conviction as evidence of guilt, but only for evaluating the weight to be given his testimony.  Such limiting instructions can ameliorate the otherwise damaging effect of a prosecutor's improper remarks, because "juries are presumed to follow their instructions". *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (internal quotation marks and citation omitted); *see also Ward v. Whitley*, 21 F.3d 1355, 1364 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995); *Bagley v. Collins*, 1 F.3d 378, 381 (5th Cir. 1993); *Derden v. McNeel*, 978 F.2d at 1460.

As also noted, although Johnson objected to other, unchallenged portions of the prosecutor's argument, he did not object to the remarks at issue.  Although, as discussed *supra*, the lack of such objection is not a procedural bar to our consideration of the merits of Johnson's claim, it indicates, at the least, that Johnson's counsel did not consider them to be particularly

egregious.  *Cf. **Wainwright v. Witt***, 469 U.S. 412, 432 n.11 (1985) (noting that "counsel's failure to speak in a situation later claimed to be so rife with ambiguity as to constitute constitutional error is a circumstance [court is] justified in considering when assessing [habeas petitioner's] claims").

The guilt phase took less than two days.  Considering the strength of the evidence of Johnson's guilt, his failure to object to the comments at issue, and the trial court's instruction that Johnson's prior conviction could be considered only when passing on the weight of Johnson's testimony, we conclude that the improper arguments were not "a crucial, critical, highly significant factor in the jury's determination of guilt."  ***Ortega***, 808 F.2d at 411 (internal quotation marks and citation omitted).  To the extent that the improper comments may have later influenced the jury at the punishment phase, Johnson is going to receive a new sentencing hearing which will not be tainted by them.  *See **id**.* (noting that "core question of unfair prejudice" related to length of petitioner's "sentence rather than the determination of guilt or innocence").

## B.

As noted, Johnson presses two alternative bases for affirmance.  Both bases were presented in district court.

1.

The prosecutor's characterization of Johnson as a "major drug dealer" is claimed to have been extremely prejudicial and unsupported by the evidence. Although, as noted, Johnson made this contention in the district court, neither the magistrate judge nor the district court addressed it.

In any event, this claim is without merit. Semetco testified that Johnson told him that he had been involved for the last month helping friends sell approximately five pounds of methamphetamine (approximately 1800 times the amount Johnson sold to Semetco). Because the argument was supported by the evidence, it was not improper.

2.

Johnson asserts also that we can affirm the grant of habeas relief on the ground that the prosecutor, in attacking the affidavit of Johnson's father, made the false claim that Johnson was a lawyer who had prepared the affidavit for his father's signature, in an attempt to manipulate the course of the trial. (Johnson gave the affidavit to his lawyer on the first day of trial.)

Johnson is not a lawyer. But, on cross-examination, he admitted that he was "a jailhouse lawyer". In any event, we agree with the magistrate judge that, "[r]egardless of its truth or falsity, it is unimaginable that a prosecutor calling a defendant a lawyer would ever give rise to a constitutional error".

III.

In sum, the district court erred by holding that, as a result of the prosecutor's improper comments during closing argument at the guilt phase, Johnson's "trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment". *Jones*, 864 F.2d at 356. Therefore, that portion of the judgment vacating Johnson's conviction is **REVERSED**, and the case is **REMANDED** to the district court for such further proceedings as may be appropriate.

*REVERSED in PART and REMANDED*